**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MURPHY BURNETT**                                                                   **PLAINTIFF**

**V.**                              **CAUSE NO. 3:14-CV-00651-CWR-LRA**

**HINDS COUNTY, MISSISSIPPI,** *et al.*                            **DEFENDANTS**

**ORDER**

Before the Court are the plaintiff's motions to disqualify counsel, to strike, and for sanctions. Docket Nos. 84 and 87. The motions have been fully briefed and the Court is ready to rule.

**I.**       **Factual and Procedural History**

Murphy Burnett filed this action under 42 U.S.C. §§ 1983, 1985, and 1986 seeking redress for alleged violations of his constitutional rights, in addition to supplemental state law claims. Docket No. 1. Burnett named several defendants. Those that are relevant to this motion are the State of Mississippi through the Hinds County District Attorney's Office; Hinds County, Mississippi through its Board of Supervisors; the Hinds County Sheriff's Department and its Sheriff, Tyrone Lewis, in his official and individual capacities. *Id.*

In an earlier ruling the Court dismissed with prejudice all federal claims against the District Attorney's Office due to Eleventh Amendment Immunity. *Burnett v. Hinds Cty. ex rel. Bd. of Sup'rs*, No. 3:14–CV–651–CWR–FKB, 2015 WL 5785562, at *4 (S.D. Miss. Sept. 11, 2015). The state law claims against that defendant were dismissed without prejudice "to [their] timely refiling in a state court of competent jurisdiction." *Id*. Those claims have since been refiled in Hinds County Circuit Court. Docket No. 85.

The facts giving rise to this suit were explained in the earlier decision, but essentially the harms for which Burnett seeks redress stem from his 2010 arrest, indictment, and detention for sexual battery, rape, kidnapping, and forced armed carjacking. Burnett's most troubling claim is that the District Attorney's Office knew of his innocence but withheld exculpatory DNA evidence from his counsel, Greta Harris, an assistant Hinds County public defender. This caused Burnett to languish in jail for nearly three years until the charges were dropped in 2013.

During discovery in this suit, Burnett issued deposition subpoenas for Harris—now an assistant district attorney with the Hinds County District Attorney's Office—and her colleague, Shaunte Washington, the ADA who prosecuted Burnett. Their depositions were scheduled for November 29, 2016.

Harris, uncertain as to why she was summoned, contacted Jason Dare, outside counsel for Hinds County, who informed her that he did not represent the District Attorney's Office. He directed her to Robert Sanders, counsel for the District Attorney's Office in the related state case. Harris and Dare discussed nothing about the substance of the case.

Harris then called Sanders to notify him of her subpoena and inquire as to how she should respond. Later that day, Sanders met with Harris and Washington together, at which point he explained the nature of the suit. During this meeting, Washington recounted her prosecution of Burnett, but Harris did not discuss her representation of him. Harris and Washington met with Sanders once more on the day before the deposition to discuss the ground rules of the deposition and get advice on responding to questions. Sanders represented them both, in their official capacities, at the depositions.

The instant motions concern the scope of Harris' conversations with Sanders, Dare, and Washington. Burnett alleges that Harris breached the duty of confidentiality owed to him, and

that the others aided her in doing so.  He contends that a conflict of interest exists that warrants disqualifying Sanders and Dare as counsel for their respective clients, striking Hinds County and Sheriff Lewis' answer, and sanctioning all of the attorneys involved for misconduct.[1]  Harris remains adamant that at no time did she discuss anything about her defense of Burnett with Washington, Dare, or Sanders.  In fact, she avers that she "never discussed [her] defense of Mr. Burnette [sic] with anyone other than Mr. Burnette [sic] and possibly other employees of the public defender's office at the time of the prosecution."  Docket No. 100, at 3.

---

[1] The Court is puzzled about Burnett's motion to disqualify Sanders because Sanders is not counsel of record in this case.  His client, the Hinds County District Attorney's Office, was dismissed nearly two years ago.  Sanders' appearance at this point has been limited to representing Harris and Washington at their depositions.  His right to represent them was not challenged before or during the depositions, and the motion to disqualify was filed almost three weeks after the depositions concluded.

**II.     Discussion**

The Court's local rules compel attorneys to comply with the Mississippi Rules of Professional Conduct, including Rules 1.6,[2] 1.7,[3] 1.8,[4] 1.9,[5] and 1.11.[6]  *See* L.U. Civ. R. 83.1. None of these Rules are implicated here.

---

[2] Rule 1.6 reads:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b).
> (b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
>> (1) to prevent reasonably certain death or substantial bodily harm;
>> (2) to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interest or property of another and in furtherance of which the client has used or is using the lawyer's services;
>> (3) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;
>> (4) to secure legal advice about the lawyer's compliance with these rules;
>> (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.
>> (6) to comply with other law or a court order.

Miss. Rules of Prof'l Conduct r. 1.6.

[3] Rule 1.7 states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:
>> (1) the representation will not adversely affect the relationship with the other client; and
>> (2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:
>> (1) the representation will not be adversely affected; and
>> (2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.

*Id.* at 1.7.

[4] The applicable provision of Rule 1.8 says "[a] lawyer shall not use information relating to representation of a client (1) to the disadvantage of the client, or (2) to the advantage of himself or a third person, unless the client consents after consultation." *Id.* at 1.8(b).

[5] Rule 1.9 reads:

> A lawyer who has formerly represented a client in a matter shall not thereafter:

### A.     Disclosure and Improper Use of Confidential Information

Generally speaking, Rules 1.6, 1.8, and 1.9 prohibit an attorney from disclosing a current or former client's confidential information or using such information to the client's disadvantage.

Burnett's main argument for urging disqualification is that there is an irrebuttable presumption that Harris disclosed confidential information to Sanders, Washington, and Dare regarding her representation of Burnett. This argument is based on his reading of *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1347 (5th Cir. 1981).

In that case, the Fifth Circuit held that when an attorney represents a former client's adversary in a matter substantially related to that former representation, there is a conclusive presumption that the former client disclosed confidential information to the attorney that could

---

(a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

*Id.* at 1.9.
[6] The relevant provisions of Rule 1.11 state:

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
  (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
  (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.

*Id.* at 1.11.

be used to the client's disadvantage. 659 F.2d at 1347. It is also presumed that the attorney disclosed the former client's confidences to other attorneys in his or her firm. *Id.* at 1346.

*Corrugated Container* provides no support for Burnett. Harris is not representing any party in this case; she is a witness. The Court cannot presume that Harris disclosed Burnett's confidences to the other attorneys.

There is also no factual support demonstrating that Harris did so. In fact, all evidence suggests the contrary. During Washington's deposition she was asked whether Harris gave her any insight into Burnett's criminal case after they were subpoenaed for depositions. Docket No. 87-3, at 7. Washington replied that "Harris did not recall the case." *Id.* And Harris has provided a sworn statement avowing that she never discussed her defense of Burnett with anyone other than Burnett, "and possibly other employees of the public defender's office at the time of the prosecution." Docket No. 100, at 3. Likewise, Dare's declaration explains that he "did not discuss with Attorney Harris either (a) her representation of Murphy Burnett in any criminal matters when she was with the Hinds County Public Defender's Office or (b) the instant civil litigation, whether being the claims made by Burnett or the defenses of the Hinds County Defendants." Docket No. 94-1, at 2.

Burnett offers nothing to contradict this evidence and gives the Court no reason whatsoever as to why these statements should not be credited.[7] Consequently, the Court cannot find that Harris violated Rules 1.6, 1.8, and 1.9's protection of confidential information.

---

[7] Burnett points to Washington's deposition testimony wherein Washington states that she discussed the case with Harris. *See* Docket No. 88. However, Washington explained her statement: "The day we got the subpoena, I—we were wondering why we were getting a subpoena. So we discussed the case, I guess is the best way to say it." Docket No. 87-3, at 6. That statement does not buttress Burnett's call for disqualification.

### B.     Impermissible Conflicts of Interests

The Court must also reject Burnett's remaining argument. For the purposes of this federal litigation only, there are no conflicts of interest as defined by Rules 1.7, 1.9, and 1.11.

Rule 1.7 bars a lawyer from representing a client if the representation "will be directly adverse to another client" or the representation "may be materially limited by the lawyer's responsibilities to another . . . ." Miss. Rules of Prof'l Conduct r. 1.7(a)-(b). Rule 1.9 further prevents a lawyer from representing a person whose interests are materially adverse to a former client in a matter substantially related to the former client's representation. *Id.* at 1.9(a). And Rule 1.11 forbids an attorney from representing a client in a matter that he or she "participated personally and substantially" in as a government employee. *Id.* at 1.11(a). It also prohibits an attorney from representing an adversary of a person who the attorney acquired confidential government information about when the information could disadvantage that person. *Id.* at 1.11(b).

Again, Harris is not representing anyone in this lawsuit. She had no interest in this matter until Burnett compelled her to sit for a deposition. Having been served with the subpoena, Harris took an appropriate step by turning to counsel to learn why and to seek guidance. She was entitled, as a Hinds County ADA, to look to Sanders for such guidance.[8] Therein lies no conflict.[9]

---

[8] Because the deposition concerned Harris' representation of Burnett while a Hinds County public defender, it also would have been appropriate for her to seek guidance from the attorney for Hinds County, which she did. He, in turn, thought it best that she speak with counsel for the State. Perhaps this was because the subpoena named Harris in her official capacity as a Hinds County Assistant District Attorney. *See* Docket No. 73.

[9] Burnett is obviously troubled by the fact that his former advocate, Harris, shares the same counsel as his adversary in the state case. The better practice may have been for the State or the County to have provided Harris with separate counsel. Because Harris is not acting as an attorney in this matter, there are no grounds on which the Court can presume a violation as Burnett advocates. The Court's conclusion, however, is limited to the instant case and does not address Sander's dual representation of Harris and the District Attorney's Office in the related state case. That question, if presented, would have to be resolved by the state courts.

7

Burnett's argument that the Hinds County District Attorney's Office should be treated as Harris' second client is unavailing.  It would be a closer question if the District Attorney's Office, with Harris' participation, was currently pursuing charges against Burnett.  But that is not the case.  Moreover, if the Court were to treat the District Attorney's Office as Harris' client, it could hinder lawyers who wish to transfer employment to and from the government—a consequence that the Rules seek to avoid.  *See id.* at 1.11 cmt.

Just as Burnett has offered no evidence showing that Harris committed professional misconduct, he has also failed to demonstrate that Sanders, Dare, or Washington attempted to induce Harris to do so.  Dare and Harris both vow that the scope of their pre-deposition conversation was limited to Dare giving Harris the name and contact information of counsel for the District Attorney's Office (Sanders).  Docket Nos. 94-1 and 101.  Additionally, Harris attests that Sanders only informed her of the nature of this case and discussed ground rules for the deposition, but never inquired into her representation of Burnett.  Docket No. 101.  While Harris admits that Washington discussed her prosecution of Burnett during their meeting with Sanders, Harris says that Washington did not ask about Harris' defense of him.  *Id.*  None of this constitutes misconduct.

### III. Conclusion

The motion to disqualify Dare and his law firm is denied, as are the motions for sanctions.  The Court also denies the motion to strike Hinds County and Sheriff Tyrone Lewis' answer.  The motion to disqualify Sanders and his law firm is moot.

**SO ORDERED**, this the 20th day of July, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE