# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**MURPHY BURNETT**                                                            **PLAINTIFF**

**V.**                                          **CAUSE NO. 3:14-CV-00651-CWR-LRA**

**HINDS COUNTY, MISSISSIPPI; HINDS**                    **DEFENDANTS**
**COUNTY SHERIFF'S DEPARTMENT;**
**TYRONE LEWIS; CEDRIC MYLES;**
**PATRICIA WILDER; CITY OF**
**JACKSON**

## ORDER

Before the Court is the defendants' motion for summary judgment. Docket No. 80. The motion has been fully briefed, and the Court is ready to rule.

Murphy Burnett filed this action under 42 U.S.C. §§ 1983, 1985, and 1986 for alleged deprivation of and conspiracy to interfere with his civil rights. He also brought state law claims. Burnett named several entities and individuals as defendants. Those defendants relevant to this motion are the City of Jackson and two of its police officers, Detective Patricia Wilder and Officer Cedric Myles, in their official and individual capacities (collectively referred to as "the Jackson Defendants").

The allegations have been discussed in this Court's prior Orders, but the harms for which Burnett seeks redress stem from his wrongful arrest, indictment, and nearly three-year detention for alleged sexual battery, rape, kidnapping, and armed carjacking. *See Burnett v. Hinds Cty. ex rel. Bd. of Sup'rs*, No. 3:14-CV-651-CWR-FKB, 2015 WL 5785562, at *4 (S.D. Miss. Sept. 11, 2015). Exculpatory DNA evidence eventually caused the Hinds County District Attorney to dismiss all charges.

The Jackson Defendants now seek summary judgment on the § 1983 and state law claims.[1] The familiar summary judgment standard applies. *See Hill v. Hinds County, Miss.*, No. 3:12-CV-880-CWR-FKB, 2015 WL 1014305, at *2 (S.D. Miss. Mar. 9, 2015). Each claim will be taken in turn.

I.  **Section 1983 Claims against the City of Jackson**

Burnett argues that the City of Jackson failed to train its police officers to properly identify suspects. This lack of training, he says, led to his illegal arrest and detention for a crime he did not commit.

A municipality can be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In other words, a plaintiff must show "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010)

Here, however, Burnett fails on all fronts. He has not identified a policy; he has not connected a policy to the City of Jackson's policymaker(s); and he has failed to show a constitutional violation that occurred from the execution of a city policy.
A municipality can be liable for a custom of inadequately training its police officers. *Brown v. Bryan Cty., Okla.*, 219 F.3d 450, 457 (5th Cir. 2000). "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular [training] omission is substantially certain to result in the violation of the constitutional

---

[1] The Jackson Defendants neglected to move for summary judgment on the §§ 1985 and 1986 claims. As such, said claims will survive this motion.

rights of their citizens, the dictates of *Monell* are satisfied." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 396 (1989). This is the route Burnett travels to pin liability on the City of Jackson.

Burnett attempts to establish inadequate training procedures by recapping the criminal investigation that led to his arrest. It began with Officer Fred Nelson using his cell phone to capture still photos of the assailant from surveillance video at the crime scene. After viewing the cell phone photographs, Officer Cedric Myles informed Detective Patricia Wilder that the assailant resembled Burnett, a person with whom Myles was familiar from a previous criminal matter. Officer Myles knew that Burnett lived near the crime scene.

Burnett contends that Officer Myles should have viewed the original surveillance video before making the identification and not simply relied upon the cell phone photos, which Burnett says were of low quality.

Officer Myles testified that as a patrolman, after reviewing the photographs, he did all that was required of him. He drafted and sent a supplemental report to the detective (Wilder) tasked with investigating the case. That detective, in turn, pursued leads. Burnett was not arrested until further investigation resulted in the victim picking his mugshot out of a six-person photo line-up. From this testimony, Burnett says, "it appears that Officer Myles and other JPD officers involved . . . suffered from a lack of training in proper and reliable identification of suspects." Docket No. 112, at 9.

There are a number of reasons why the Court must reject Burnett's claim. The first is that he puts forth no evidence—such as a training handbook, expert testimony, or best practices—to support his criticism of the JPD's procedures. His personal opinion alone is certainly not enough to cast doubt on the adequacy of the police officers' training.

Second, to be actionable, the inadequate training must have caused a violation of Burnett's constitutional rights. *See Kitchen v. Dall. Cty., Tex.*, 759 F.3d 468, 483 (5th Cir. 2014) ("As is well established, every *Monell* claim requires 'an underlying constitutional violation.'"), *abrogated on other grounds by Kingsely v. Hendrickson*, 135 S. Ct. 2466, 2473-76 (2015).

Burnett argues that the officers' actions deprived him of his Fourth Amendment right to be free from unlawful arrest. But this argument fails. "Whether an arrest is illegal . . . hinges on the absence of probable cause." *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). Probable cause to arrest Burnett existed when the victim positively identified him from the photo line-up. "The Fifth Circuit has held that a positive identification by a crime victim provides law enforcement with probable cause for arrest." *McLain v. City of Ridgeland*, No. 3:06-CV-534-HTW-FKB, 2010 WL 780532, at *6 (S.D. Miss. Feb. 28, 2010) (citation omitted). Burnett's subsequent indictment by the Hinds County Grand Jury provided further support for probable cause. *See Gersetin v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (acknowledging that a grand jury indictment "conclusively determines the existence of probable cause"). Therefore, Burnett cannot establish a constitutional violation.

Last, Burnett has not demonstrated that the City of Jackson's policymakers were deliberately indifferent to a need for more law enforcement training on identification procedures. "Deliberate indifference is more than mere negligence." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). It typically requires a pattern of similar violations showing that "the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights." *Id.* But Burnett relies on this single incident of misidentification. Without a pattern, he must "prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and the failure to train represented the

moving force behind the constitutional violation." *Id.* He cannot meet this burden because it is necessarily predicated on a showing of inadequate training and a constitutional violation, which he has not established.

Summary judgment on the claim against the City of Jackson and official-capacity claims against Officer Myles and Detective Wilder is therefore appropriate.[2]

## II. Section 1983 Claims Against Officer Myles and Detective Wilder

Officer Myles and Detective Wilder invoke the doctrine of qualified immunity as a defense to the individual capacity claims asserted against them.

Qualified immunity shields government officials from civil liability when their conduct "could reasonably have been believed to be legal." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). In determining whether qualified immunity is applicable, the "court must [first] decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second the court must decide whether the right at issue was clearly established at [the] time of the defendant's alleged misconduct." *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

The personal claims against the officers fail because, as noted above, Burnett has not established a constitutional violation.[3]

## III. State Law Claims

The Jackson Defendants next argue that Burnett's state law claims are barred by the Mississippi Tort Claims Act — "the exclusive remedy for filing a lawsuit against governmental

---

[2] The suit against the officers in their official capacities is, "in all respects other than name, to be treated as a suit against the [governmental] entity." *Ky. v. Graham*, 473 U.S. 159, 166 (1985).
[3] The officers would have been entitled to qualified immunity even if they had "reasonably but mistakenly concluded that probable cause [was] present" to arrest Burnett. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009); *see also Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 442 (5th Cir. 2015) (noting "the well-established rule that reasonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment.").

entities and [their] employees." *City of Jackson v. Brister*, 838 So. 2d 274, 278 (Miss. 2003). Burnett's response fails to address these claims; therefore, they do not survive summary judgment. *City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof.").[4]

**IV.     Conclusion**

The defendants' motion for summary judgment is granted. The § 1983 claims and the state law claims against the City of Jackson, Cedric Myles, and Patricia Wilder are dismissed with prejudice.

**SO ORDERED**, this the 21st day of September, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[4] Any arguments posited by Burnett likely would not have penetrated the discretionary function exception immunity provided to the officers in this instance. *See Bosarge*, 796 F.3d at 444-45.